IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADM INTERMARE – A Division of ADM International SARL,<br><br>Petitioner,<br><br>v.<br><br>GLOBAL AMERICAN TRANSPORT LLC,<br><br>Respondent. | C. A. No. _____ |

**PETITION AND MOTION TO CONFIRM
A FINAL FOREIGN ARBITRATION AWARD**

Petitioner ADM Intermare – A Division of ADM International SARL ("ADM"), petitions and moves pursuant to 9 U.S.C. § 207 for an order confirming a final foreign arbitration award issued against respondent Global American Transport LLC (the "Charterer" or "GAT").

**PRELIMINARY STATEMENT**

1.       ADM and GAT entered into a charterparty on September 22, 2023, that was documented in a recap email and an amended New York Produce Exchange form ("NYPE Form") (the recap email and the NYPE Form are collectively the "Contract"). The Contract noted and provided that:

(a)     ADM had leased the MV "Eastern Hawk" (IMO 9888869) (the "Vessel") from Goodwill Maritime PTE. LTD. (the "Head Owners");

(b)     ADM would sub-lease the Vessel to GAT for a period charter of six to eight months;

(c)     for the duration of the sub-lease, GAT "shall provide and pay for all the fuel …." (Clause 2 of the NYPE Form incorporated into the Contract);

(d)     it would be governed by English law;

1

(e) disputes would be resolved by arbitration (Clause 18 of the Contract); and

(f) designated the London Maritime Arbitration Association (LMAA) as the arbitral tribunal pursuant to Clause 70 of the Contract.

2. On January 8, 2025, ADM submitted its claims in a London arbitration proceeding seeking (i) $78,654.47 in unpaid hire/lease payments and (ii) $200,000 for bunkers/fuel that ADM paid to Bunker Partner OU ("Bunker Partner"), a fuel supplier, on behalf of GAT.

3. ADM attached exhibits including correspondence between ADM and GAT attesting that GAT did not deny responsibility for the outstanding $78,654.47 but rather implored ADM to consider a repayment plan. ADM also submitted exhibits showing that GAT was responsible for fuel payments under the Contract (Clause 2 of the NYPE Form), that Bunker Partner issued an Order Confirmation evidencing it had supplied fuel to the Vessel, that GAT took delivery of the fuel, that GAT confirmed that a balance was due as a result and that ADM paid Bunker Partner $200,000 to avoid Bunker Partner arresting the Vessel in Fujairah, United Arab Emirates.

4. On February 26, 2025, George Eddings, an English attorney located in London, United Kingdom, acting as a sole arbitrator (the "Arbitrator"), issued a Final Arbitration Award (the "Award") in the arbitration proceeding.[1] The Award agreed with all of ADM's submissions and granted all of the relief sought by ADM. In the Award, the Arbitrator:

- Held that ADM proved its claim for $278,654.47 including both the final hire balance of $78,654.47 and $200,000 bunker payment;

---

[1] A certified copy of the Award is attached as Exhibit 1. A certified copy of the parties' contract is attached as Exhibit 2.

2

- Held that GAT must pay ADM $278,654.47 plus interest at the rate of 6% per annum, compounded quarterly, from November 8, 2024 on the $78,654.47 portion of the Award and from November 25, 2024 on the $200,000 portion of the Award until the date of payment;

- Held that GAT shall bear both its own and ADM's legal cost (the later to be assessed by the Arbitrator if the parties cannot agree) plus interest at the rate of 6% per annum and pro rata, compounded at three monthly rests, from the date of the Award until the date of payment in full; and

- Held that GAT shall bear the arbitration costs of £2,125 and in the event ADM already paid any of it, reimburse ADM immediately plus interest at the rate of 6% per annum and pro rata, compounded at three monthly rests, from the date payment by ADM to the date of reimbursement by GAT.

5. Decisions of arbitrators are entitled to considerable deference and ADM respectfully requests that the Court confirm the Award and enter the proposed form of Order attached hereto.

**PARTIES**

6. ADM is a corporation organized under the laws of Switzerland.

7. GAT is a Delaware limited liability company. At all times relevant to these proceedings, including currently, Harvard Business Services, Inc. served as GAT's Delaware registered agent, and it maintains an office at 16192 Coastal Hwy, Lewes, Delaware 19958. Delaware law requires GAT to have a registered agent in Delaware for the purpose of accepting "service of process on the limited liability company …." 6 *Del. C.* § 18-104(a)(2).

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action pursuant to 9 U.S.C. §§ 202 and 203 because the dispute concerns an arbitration award arising out of a commercial contract between entities that are not entirely domestic, and the arbitration award was issued in London, a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, commonly known as the New York Convention. *F.A. Richard and Assoc., Inc. v. General Marine Catering Co., Inc.*, 668 So.2d 199, 202-203 (La. Ct. App. 1997) (finding that the New York Convention applies because there is a written agreement; the written agreement provides for arbitration in London, both the United Kingdom and United States are signatories to the New York Convention; the disagreement arises out of a commercial relationship; and the dispute is not entirely domestic).

9. Venue is proper in this district as GAT is a Delaware limited liability company and pursuant to 9 U.S.C. § 204.

## FACTS

**A.    The Contract and Unpaid Debts**

10. On September 22, 2023, ADM and GAT entered into the Contract, consisting of an email "recap" and the NYPE Form. Under the Contract, ADM agreed to sub-lease the Vessel to GAT for six to eight months. Ex. 2. The Contract provided that "whilst the Vessel is on hire the Charterers [GAT] shall provide and pay for all the fuel…." Clause 70 of the Contract also stipulated that it would be governed by English law, any dispute arising out of the Contract would be subject to arbitration in London and conducted in accordance with the rules of the London Maritime Arbitrators Association (LMAA).

11. Per the Award, GAT owes ADM $278,654.57, $78,654.47 in unpaid sub-lease payments and $200,000 for bunkers/fuel ADM paid to Bunker Partner on behalf of GAT.

4

### i. The Unpaid Lease/Hire Payment

12. On November 9, 2024, ADM sent GAT an updated Final Hire Statement reflecting a balance of $78,654.47 due to ADM from GAT.

13. GAT's response did not contest what it owed, but requested more time to pay:

> DUE CASH FLOW IRREGULARITIES, [GAT IS] NOT IN A POSITION PROMPTLY SETTLE THE TOTAL OUTSTANDING. [ADM IS] KINDLY REQUESTED TO WAIT SOME TIME FOR [GAT] REVERT WITH A MORE PRAGMATIC REPAYMENT PLAN ON AMOUNTS AND DEBT.

### ii. The Unpaid Bunker/Fuel Payment

14. Prior to May 23, 2024, GAT ordered bunkers/fuel from Bunker Partner.

15. On May 23, 2024, Bunker Partner confirmed GAT's bunker order for 648.890mt of HSGO 380CST (the "Bunkers").

16. On May 28, 2024, GAT received delivery of the Bunkers.

17. GAT has never contested its obligation to pay for the Bunkers. Instead, it has cited repeatedly to "cashflow difficulties" while failing to pay Bunker Partner.

18. After GAT's continued failure to pay, Bunker Partner threatened to have the Vessel "arrested," i.e., detained by court order and used as security to satisfy the unpaid fuel invoice.

19. On October 29, 2024, Bunker Partners sent a letter to ADM, GAT, Head Owners and the Master of the Vessel stating if the "payment of the outstanding balance of US$268,569.52 and US$13,245,64 respective interests incurred so far" was not paid by October 31, 2024, it would arrest the Vessel at Fujairah, United Arab Emirates, the port to which the Vessel was then en route.

20. On October 30, 2024, ADM wrote to GAT expressing concern about GAT's failure to settle the Bunkers invoice and urged it to pay off the balance. ADM was worried that:

> [a]ny action taken against the vessel by bunker suppliers/sellers has the potential to drastically impact the vessel's schedule …. Needless to say, this has the risk of having a substantial loss exposure for owners, ADM as period GAT and eventually GAT as the liable party.

5

21. GAT again failed to deny its obligation to pay, but again cited the "company's present cash flow difficulties" and proposed that if ADM settled some of the bunker debt "to avoid any arrest and mitigate costs", GAT would pay it back.

22. On November 5, 2024, ADM replied, pressing GAT to fulfill its obligations to Bunker Partner and GAT responded citing again to "cashflow abnormalities".

23. Between November 5 and November 12, 2024, ADM wrote to GAT numerous times insisting that GAT settle its debt. Instead of paying the debt, GAT continued to claim that it had "cash flow irregularities" and asked ADM to propose a repayment plan.

24. On November 15, 2024, ADM sent a letter to GAT stating that GAT's failure to pay Bunker Partner's invoice constituted a breach of the Contract and "GAT shall be liable in full for all resulting loss and damage[.]"ADM also notified GAT that it was "exploring settlement of some of the debt owed to Bunker Partner to avoid an arrest of the Vessel" and in the event some or all of GAT's debt was settled, ADM would seek full recovery plus interests for the amount paid.

25. On November 18, 2024, GAT responded apologizing for the "temporary inability to settle balance" and requesting for details of any settlement reached with Bunker Partner.

26. To avoid incurring additional damages and disruption to the Vessel's schedule—which would occur if Bunker Partner arrested the Vessel in Fujairah—ADM negotiated directly with Bunker Partner and paid it $200,000 as part of a Settlement Agreement. The Settlement Agreement stipulated that ADM could recover the amount paid from GAT.

27. On November 20, 2024, ADM sent GAT the Settlement Agreement it entered with Bunker Partner and demanded satisfaction of GAT's $278,654.47 debt including the final hire balance and the bunker settlement payment. GAT never responded.

28. On November 21, 2024, ADM sent GAT another email noting that this was its final warning, and it would escalate matters legally if GAT did not respond by the next day. *Id.*

29. On November 25, 2024, ADM remitted $200,000 to Bunker Partner in satisfaction of the Settlement Agreement.

**B.    The Arbitration**

30. On November 26, 2024, ADM served notice of commencement of the London arbitration—pursuant the Contract—on GAT via email and informed it that ADM had appointed Mr. George Eddings as arbitrator on behalf of ADM and the Arbitrator had accepted his appointment. The notice email also stated that, per the Contract, GAT had 14 days from the date of notice of arbitration to appoint its own arbitrator, otherwise ADM would appoint the Arbitrator as the sole arbitrator in the matter.

31. On November 30, 2024, GAT responded reconfirming its liability for the $278,654.57. GAT stated that:

> *[GAT IS] NOT DISCLAIMING ANY OF THE OUTSTANDING, BUT AT THE MOMENT CASH FLOW DIFFICULTIES DEPRIVES [IT] OF A PROMPT SETTLEMENT. [GAT] WOULD KINDLY ASK [ADM] TO CONSIDER A HELPFUL REPAYMENT PLAN TO BE ACCELERATED AT THE TIME [GAT'S] CASH FLOW COMES BACK TO NORMAL. IF SO, [GAT] WOULD WELCOME [ADM'S] PROPOSITION FOR FURTHER DEVELOPMENT. [GAT] WILL TRY BEST SO NO UNNECESSARY LEGAL COSTS ARE ACCRUED.*

32. On December 2, 2024, ADM responded that its proposal "is that GAT pay ADM the sum of $278,654.47 plus interest at a rate of 5.5% per annum plus legal costs incurred to date." ADM noted that unless GAT complied, it would proceed with the arbitration.

33. GAT failed to appoint an arbitrator. On December 11, 2024, Mr. Eddings was appointed as sole arbitrator.

34. On January 8, 2025, ADM submitted its arbitration claims captioned as *In The Matter of An Arbitration And In The Matter Of An LMAA Arbitration Between ADM Intermare –*

7

*A division of ADM International SARL and Global American Transport LLC* (the "Arbitration") in London, United Kingdom.

35. On February 14, 2025, GAT filed its defense submissions. GAT admitted that it owed ADM the final hire balance of $78,654.47 but argued that ADM breached its legal obligation to mitigate loss by declining GAT's request for an installment payment plan as to the final hire balance. GAT asked the Arbitrator to impose a mutually acceptable payment plan, to be phased out for a specific period of time.

36. As to the $200,000 bunkers settlement, GAT alleged that Bunker Partner had not acquired rights of lien over the Vessel or alternatively, that ADM had failed to provide any proof to that effect. GAT also alleged that even if Bunker Partner had a valid and enforceable claim, that claim would be towards the Head Owners and the Vessel, not ADM. Furthermore, GAT contested whether ADM had the authority to enter into the Settlement Agreement on behalf of the Head Owners and argued that ADM's right to seek indemnification for the bunker payment was unsubstantiated.

37. On February 19, 2025, ADM filed its reply submission reiterating that ADM was under no obligation to reduce payment of the $78,654.47 hire that remained due and noting that GAT itself actively encouraged ADM to settle GAT's debt to Bunker Partner and seek reimbursement from GAT.

38. On February 26, 2025, the Arbitrator issued the Award. The Arbitrator accepted ADM's submissions as true and found that both of ADM's claims succeeded. Ex. 1. ¶ 18, 20. The Arbitrator held that with regards to the admitted final hire debt, ADM had no obligation to accept a payment plan and was perfectly justified in pursuing an award. *Id.* ¶ 19. The Arbitrator also decided that the steps taken by ADM to remit the bunker payments to Bunker Partner to avoid the

arrest of the Vessel were reasonable steps in mitigation of a potential indemnity claim against it and was in fact, suggested by GAT itself. *Id.* ¶ 20.

39.     The Award ordered GAT to pay ADM the sum of $278,654.47 plus 6% interest per annum, compounded quarterly, from November 8, 2024 on the $78,654.47 in unpaid hire and from November 25, 2024 on the $200,000 bunkers settlement payment until the date of payment. *Id.* ¶ 23-24. The Award also ordered GAT to bear both its own and ADM's legal cost (the later to be assessed by the Arbitrator if the parties cannot agree) plus 6% interest per annum and pro rata, compounded at three monthly rests, from the date of the Award until the date of payment in full. *Id.* ¶ 25. Lastly, the Award ordered GAT to bear the arbitration costs of GBP2,125 and in the event ADM already paid any of it, reimburse ADM immediately plus 6% interest per annum and pro rata, compounded at three monthly rests, from the date of payment by ADM to the date of reimbursement by GAT. *Id.* ¶ 26.

40.     On March 10, 2025, ADM sent a letter to GAT demanding that GAT pay the sums due to ADM in accordance with the Award. The total sums due and owing to ADM was $283,738.08 and £10,828.89, inclusive of interest as at the date of that letter. That fee included: (i) the principal sum of $278,654.47; (ii) accumulated interest of $5,083.61 calculated in accordance with the Award; (iii) ADM's legal costs of £8,702.50 plus the cost of enforcing this award; and (iv) arbitration costs of £2,125 which ADM already paid plus interest of £1.29.

## COUNT ONE
### (Confirmation of the Award under 9 U.S.C. § 207)

41.     ADM incorporates by reference the allegations and arguments in the foregoing paragraphs and in the Opening Brief in Support of this Petition and Motion.

42.     The Award is a final binding adjudication of all liability and damages issues in the arbitration.

43. The Award should be confirmed under 9 U.S.C. § 207.

44. Interest should continue to accrue per the terms of the Award until payment is made in full.

FAEGRE DRINKER
BIDDLE & REATH LLP

/s/ Todd C. Schiltz
Todd C. Schiltz (#3253)
Dami E. Omotunde (#7246)
222 Delaware Avenue, Suite 1410
Wilmington, DE  19801
(302) 467-4200
todd.schiltz@faegredrinker.com
dami.omotunde@faegredrinker.com

*Counsel for Petitioner ADM Intermare* – A Division of ADM International SARL

Dated:  September 25, 2025