IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADM INTERMARE – A Division of ADM International SARL, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | C.A. No. 25-1195-MN |
| GLOBAL AMERICAN TRANSPORT LLC, | ) ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court are the motions of Petitioner ADM Intermare ("Petitioner" or "ADM") to confirm a foreign arbitration award (D.I. 1) and for entry of default judgment (D.I. 16). For the reasons set forth below, the Court recommends that both motions be GRANTED.

## I.    BACKGROUND

ADM is a corporation organized under the laws of Switzerland.  (D.I. 1 ¶ 6).  Respondent Global American Transport LLC ("Respondent" or "GAT") is a Delaware limited liability company with a registered agent located in Lewes, Delaware.  (*Id*. ¶ 7).  Both parties are in the maritime business.  On September 25, 2025, ADM filed the present action against GAT, seeking to confirm a London arbitration award that ADM obtained after GAT refused to pay certain contractual amounts due.  (*See generally id.*).

According to the Petition, in September 2023, ADM and GAT entered into an agreement ("the Charter Agreement"), composed of a "recap email" and New York Produced Exchange form, by which GAT sub-leased a commercial cargo ship ("the Vessel") from ADM.  (D.I. 1 ¶¶ 1 & 10; D.I. 1, Ex. 2 (Charter Agreement)).  In addition to requiring sub-lease payments, the Charter Agreement required GAT to pay for "all the fuel" for the duration of the sub-lease and included

an arbitration provision designating the London Maritime Arbitration Association as the arbitral tribunal.  (D.I. 1 ¶¶ 1 & 10; D.I. 1, Ex. 2 at 4, 7 & 20-21).

ADM alleges that, in May 2024, GAT ordered fuel for the Vessel from third-party Bunker Partner OU ("Bunker Partner").  (D.I. 1 ¶¶ 14-16).  GAT apparently failed to pay for the fuel, and Bunker Partner threatened to have the Vessel arrested at a port in the United Arab Emirates.  (*Id*. ¶¶ 17-19).  After ADM expressed concern about Bunker Partner's threat, GAT proposed that ADM settle the debt with GAT to pay ADM back after resolving its own "cash flow difficulties."  (*Id*. ¶¶ 20 & 21).  To avoid arrest of the Vessel, in November 2024, ADM paid Bunker Partner $200,000 to settle the debt for the fuel used by GAT.  (*Id*. ¶¶ 26 & 29).  And in November 2024, according to the Petition, ADM sent GAT a Final Hire Statement requesting $78,654.47 in unpaid sub-lease payments.  (*Id*. ¶ 12).  According to the Petition, ADM has made several unsuccessful attempts to obtain the combined $278,654.47 from GAT.  (*Id.* ¶¶ 27 & 28).

In November 2024, ADM commenced arbitration proceedings in London pursuant to the Charter Agreement.  (D.I. 1 ¶¶ 30-34).  GAT participated in the proceeding and filed defensive submissions.  (*Id*. ¶¶ 35 & 36; *see also* D.I. 1, Ex. 1 ¶ 12 ("On 14 February 2025, the [GAT] served defence submissions drafted by their in-house legal team.")).  In its submissions, GAT admitted to owing the final hire balance of $78,654.47 but argued that ADM breached its obligation to mitigate losses by declining GAT's request for an installment plan.  (D.I. 1 ¶ 35; D.I. 1, Ex. 1 ¶ 13).  GAT also made various arguments regarding the $200,000 Bunker Partner settlement, including that ADM did not have authority to enter into the settlement agreement.  (D.I. 1 ¶ 36; D.I. 1, Ex. 1 ¶ 14).

In February 2025, the arbitrator ruled in ADM's favor, ordering GAT to pay:  (1) the entire outstanding sub-lease amount, (2) the amount that ADM paid Bunker Partner to settle GAT's debt, (3) both parties' legal fees and (4) the arbitration costs.  (D.I. 1 ¶ 39; D.I. 1, Ex. 1 ¶¶ 24-26).  For

the $78,654.47 in unpaid sub-lease payments, the arbitrator awarded an interest rate of 6% per annum, compounded at three monthly rests (*i.e.*, quarterly), from November 8, 2024 (the date of the Final Hire Statement) until payment. (D.I. 1 ¶ 4; D.I. 1, Ex. 1 ¶¶ 21 & 24). For the $200,000 settlement agreement, the arbitrator awarded an interest rate of 6% per annum, compounded quarterly, from November 25, 2024 (the date when ADM paid Bunker Party) until payment. (D.I. 1 ¶ 4; D.I. 1, Ex. 1 ¶¶ 21 & 24). For legal fees, the arbitrator awarded an interest rate of 6% per annum and pro rata, compounded quarterly, from the date of the arbitration award (February 26, 2025) until payment. (D.I. 1 ¶ 4; D.I. 1, Ex. 1 ¶¶ 22 & 25). Lastly, with respect to the £2,125 in arbitration costs, the arbitrator awarded an interest rate of 6% per annum and pro rata, compounded quarterly, from the date of payment by ADM to the date of reimbursement by GAT. (D.I. 1 ¶ 4; D.I. 1, Ex. 1 ¶ 26).[1]

ADM filed the present action via petition and motion to confirm the foreign arbitration award on September 25, 2025, and ADM effectuated service on GAT on September 29, 2025. (*See* D.I. 1; D.I. 3; D.I. 5; D.I. 7; *see also* D.I. 18 ¶¶ 6-9). The deadline for GAT to answer was October 20, 2025. After GAT failed to respond to the Petition or otherwise appear, the Clerk of the Court entered default against GAT on February 3, 2026. (D.I. 14). On February 12, 2026, Petitioner moved for default judgment, supported by an attorney affidavit. (D.I. 16; D.I. 18). To date, GAT has failed to respond to the Petition or make any appearance in this action.

---

[1]     In response to this Court's Order (D.I. 20), Petitioner submitted documentation establishing that it paid the £2,125 in arbitration costs on March 7, 2025 and incurred £8,757.12 in legal costs associated with the arbitration (D.I. 21 ¶¶ 4 & 6; D.I. 21, Exs. A & B).

## II.     LEGAL STANDARDS

### A.     Confirmation of Foreign Arbitration Awards

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), as implemented by Chapter 2 of the Federal Arbitration Act ("FAA"), permits the recipient of a foreign arbitration award to petition a district court to enforce the award.  *See* 9 U.S.C. § 201 *et seq*.  "United States courts must confirm foreign arbitral awards falling under the Convention except in very limited circumstances."  *SEI Societa Esplosivi Industriali SpA v. L-3 Fuzing & Ordnance Sys., Inc.*, 843 F. Supp. 2d 509, 512 (D. Del. 2012); *see also* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.").

The Convention provides that enforcement of an award may be refused only if one of the seven exceptions articulated in Article V of the Convention apply.  *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. V, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 [hereafter, "NY Convention"]; *see also SEI Societa*, 843 F. Supp. 2d at 513 ("The 1958 Convention shifted the burden of proof in an enforcement action to the party opposing enforcement and limited its defenses to the seven set forth in Article V.").  The first five exceptions deal with specific infirmities in the arbitration proceedings between the parties, and the burden to show one of the exceptions applies rests squarely with the party opposing enforcement.  *See* NY Convention, art. V.1.  Additionally, if (a) the subject matter of the difference is not capable of settlement by arbitration under the law of the enforcing country or (b) the recognition or enforcement of the award would be contrary to the public policy of that country, then recognition and enforcement of the foreign arbitration award may also be refused.  *See id.* art. V.2.

### B.    Default Judgment

Entry of default judgment is a two-step process. *Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc.*, 270 F.R.D. 161, 164 (D. Del. 2010).  First, the party seeking a default judgment must request that the Clerk of Court enter default against the party that has failed to answer the pleading or otherwise defend itself in the action. FED. R. CIV. P. 55(a); *see also J & J Sports Prod., Inc. v. Kim*, C.A. No. 14-1170-LPS, 2016 WL 1238223, at *1 (D. Del. Mar. 29, 2016).  After default has been entered, a plaintiff may obtain a default judgment. FED. R. CIV. P. 55(b); *see also J & J Sports*, 2016 WL 1238223, at *1.  If seeking relief in the form of a sum certain, the plaintiff may obtain a default judgment from the Clerk of Court. FED. R. CIV. P. 55(b)(1); *see also J & J Sports*, 2016 WL 1238223, at *1.  Otherwise, "the party seeking default judgment must apply to the court for an entry of default judgment." *Tristrata Tech.*, 270 F.R.D. at 164.

Courts have discretion over whether to enter a default judgment in a particular case. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  The court considers three factors when determining if default judgment is appropriate:  "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).  When default judgment is entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (cleaned up).  As to damages, however, a court must calculate the appropriate amount of damages if not for a sum certain; the court cannot merely accept plaintiff's representations. *See PPG Indus. Inc v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 161 (3d Cir. 2022); *Palmer v. Slaughter*, C.A. No. 99-899-GMS, 2000 WL 1010261, at *2 (D. Del. July 13, 2000).

III.    **DISCUSSION**

A.    **ADM's Foreign Arbitral Award**

Petitioner has established that confirmation of the arbitral award is warranted, if not required. The Convention applies to the present arbitral award because it was awarded in London, and ADM seeks enforcement of it in the United States. (*See* D.I. 1; D.I. 1, Ex. 1). Because ADM petitioned for confirmation within three years of receiving its February 2025 arbitral award, the Court is required to confirm the arbitral award unless one of the grounds for refusal specified in the Convention applies. *See SEI Societa*, 843 F. Supp. 2d at 513.

Nothing in the present record indicates that any of the seven exceptions apply here. *See* NY Convention, art. V. Specifically, the Court is unable to conclude (1) that GAT was under some incapacity or that the parties' arbitration agreement is invalid, (2) that GAT was not given proper notice of the appointment of the arbitrator and arbitration proceedings or that GAT was unable to present its case, (3) that the arbitration proceedings exceeded the scope of the parties' arbitration agreement, (4) that the arbitration was not in accordance with the parties' arbitration agreement or (5) that the arbitration award has not yet become binding. (*See* D.I. 1 ¶¶ 30-38); *see also* NY Convention, art. V.1. Nor does anything in the present record indicate that the "subject matter of the difference" is not capable of settlement by arbitration or that recognition and enforcement of the arbitration award would be contrary to the public policy of the United States or Delaware. *Id.* art. V.2.

Accordingly, the Court recommends that ADM's motion to confirm a final foreign arbitration award be granted.

## B.    Default Judgment

### 1.    Liability

ADM has established that entry of default judgment is warranted.  All three factors weigh in favor of granting ADM's motion for default judgment.  *See Chamberlain*, 210 F.3d at 164.

As to the first factor, taking the allegations in the Petition as true, ADM "will undoubtedly suffer prejudice if this motion is denied because it would otherwise be unable to recover damages for [GAT's] breaches."  *DoiT Int'l, LTD v. BlackSwan Techs., Inc.*, C.A. No. 23-560-MN, 2023 WL 6211722, at *2 (D. Del. Sept. 25, 2023), *report and recommendation adopted*, 2023 WL 7408034 (D. Del. Nov. 9, 2023); *see also Adru Tech Ltd. v. DS Games, Inc.*, C.A. No. 24-901-MN, 2025 WL 315353, at *3 (D. Del. Jan. 28, 2025).  The first factor thus weighs in favor of granting ADM's motion for default judgment.

As to the second factor, GAT does not appear to have a litigable defense given that GAT failed to answer or rebut any claims in the Petition.  *J & J Sports Prod., Inc. v. M&I Hosp. of Delaware Inc.*, C.A. No. 15-353-MN, 2018 WL 6040254, at *2 (D. Del. Nov. 19, 2018) ("It is not apparent that M&I has a litigable defense given its failure to respond to the action.").  And even if GAT sought to prevent confirmation of the arbitral award, GAT would bear a "heavy burden, as arbitration awards are subject to an 'extremely deferential' standard for review."  *Adru*, 2025 WL 315353, at *2 (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)).  The second factor also weighs in favor granting ADM's motion for default judgment.

With respect to the last factor, because GAT was properly served and refused to respond, the Court may infer that GAT's delay was due to culpable conduct.  *See Skeway v. China Nat. Gas, Inc.*, C.A. No. 10-728-RGA, 2015 WL 451435, at *1 (D. Del. Jan. 30, 2015).  As Judge Noreika has recently noted with respect to the same entity, "[l]ike D.B. Cooper and Waldo, no one is quite

sure where Respondent is." *See Satira Shipping Co. v. Glob. Am. Transp. LLC*, C.A. No. 24-1202-MN, 2025 WL 2378988, at *3 (D. Del. Aug. 15, 2025). Therefore, the third and final factor also weighs in favor of granting ADM's motion for default judgment.

        2.      <u>Damages</u>

Having found that entry of default judgment is appropriate, the Court now turns to the issue of damages. With respect to the principal sum of $278,654.47, the amount is in accordance with the arbitrator's decision and includes both the outstanding sub-lease payments ($78,654.47) and settlement amount for the fuel used by GAT ($200,000). (*See* D.I. 1, Ex. 1 ¶ 24). These amounts have been established with reasonable certainty. As to legal costs, ADM submitted invoices establishing the fees that it paid – *i.e.*, £8,757.12 in legal costs associated with the arbitration. (*See* D.I. 21, Ex. A; *see also* D.I. 21 ¶ 4). The Court finds that the requested legal costs are reasonable and in accordance with the arbitrator's decision. (D.I. 1, Ex. 1 ¶ 25). And finally, with respect to the arbitration costs of £2,125, the Court finds that the requested amount is in accordance with the arbitrator's decision. (D.I. 1, Ex. 1 ¶ 26). ADM submitted evidence demonstrating that the arbitration costs were paid on March 7, 2025. (D.I. 21, Ex. B; *see also* D.I. 21 ¶ 6).

*      \*      \**

In sum, the Court recommends that ADM's motion for default judgment be granted and that judgment be entered in the amount of $278,654.47 and £10,882.12 plus accruing interest,[2] as delineated below.

---

[2]    The foreign arbitrator awarded interest until the date of payment or reimbursement by GAT. (D.I. 1, Ex. 1 ¶¶ 24-26). The arbitrator's interest rate determinations, however, apply solely to pre-judgment interest and do not affect the post-judgment interest required by 28 U.S.C. § 1961. *See Generali Espana de Seguros y Reaseguros, S.A. v. Speedier Shipping, Inc.*, No. 21-CV-4080 (RLM), 2022 WL 1568829, at *9 n.10 (E.D.N.Y. May 17, 2022) ("[T]he Tribunal's methodology for calculating interest applies solely to pre-

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that ADM's petition and motion to confirm a final arbitration award (D.I. 1) be GRANTED and that ADM's motion for default judgment (D.I. 16) be GRANTED.

The Court further recommends that judgment be entered in favor of ADM and against GAT in the amount of:  (i) $78,654.47 plus interest accruing at a rate of six (6) percent per annum, compounded quarterly, from November 8, 2024 until entry of judgment; (ii) $200,000 plus interest accruing at a rate of six (6) percent per annum, compounded quarterly, from November 25, 2024 until entry of judgment; (iii) £8,757.12 plus interest accruing at a rate of six (6) percent per annum and pro rata, compounded quarterly, from February 26, 2025 until entry of judgment and (iv) £2,125 plus interest accruing at a rate of six (6) percent per annum and pro rata, compounded quarterly, from March 7, 2025 until entry of judgment; plus post-judgment interest pursuant to 28 U.S.C. § 1961 from the date judgment is entered until the judgment is satisfied.  The foregoing foreign-currency sums are to be converted to U.S. dollars upon entry of judgment.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation.  *See* FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d).  Any responses to the objections shall be filed fourteen (14) days after the objections.  Objections and responses are limited to ten (10) pages.  The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

---

judgment interest; post-judgment interest shall be calculated in accordance with section 1961."), *aff'd*, No. 22-1150, 2023 WL 3362839 (2d Cir. May 11, 2023).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1.  The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated:  July 1, 2026

_____
UNITED STATES MAGISTRATE JUDGE